Filed 4/11/22  P. v. Tran CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LAP PHUOC TRAN,<br><br>    Defendant and Appellant. | B308320<br><br>(Los Angeles County<br>Super. Ct. No. KA079094) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Christian R. Gullon, Judge.  Affirmed.

Law Offices of Gita B. Kapur & Associates and Geoffrey Pogue, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, and Michael J. Wise, Deputy Attorney General, for Plaintiff and Respondent.

_____

# INTRODUCTION

In 2007, Lap Phuoc Tran was facing up to seven years in prison, pleaded guilty under a negotiated plea agreement and received a prison term of three years. Before his plea, he signed an advisement of rights, waiver and plea form. He acknowledged that if he was not a citizen of the United States, his plea would result in deportation, exclusion from admission or reentry, and denial of naturalization or amnesty in the United States.

Thirteen years later, he moved to vacate his conviction under Penal Code sections 1016.5 and 1473.7, subdivision (a)(1), arguing that his advisement was inadequate and that had he understood he would be deported, he would not have pleaded guilty.[1] The trial court denied his motion.

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *Tran's 1995 Conviction, 1995 Application for Naturalization and 2019 Motion To Vacate His Conviction*

In May 1995, Tran was convicted of selling, transporting or offering to sell a controlled substance, in violation of Health and Safety Code section 11352, subdivision (a), in an unrelated case.

Before this conviction, Tran had applied to become a naturalized United States citizen. In August 1996, the Immigration and Naturalization Service (INS), now subsumed into the Department of Homeland Security (DHS), denied his application because he was still on probation for his 1995 conviction. INS informed Tran that the denial was "without

---

[1]     Undesignated statutory references are to the Penal Code.

prejudice," and he "appear[ed] to be eligible for naturalization on or after 5-2-98, and [he could] file a new application then."

In September 2019, Tran filed a motion to vacate his 1995 conviction under sections 1016.5 and 1473.7. In December 2019, the trial court granted Tran's motion under section 1016.5 and found the request for relief under section 1473.7 moot. The court vacated the conviction and set aside the plea. After the People announced they could not proceed, the court granted Tran's motion to dismiss the case under section 1382.

B.    *Tran's 2007 Negotiated Plea Agreement and Conviction*

In May 2007, the Los Angeles County District Attorney's Office filed a felony complaint against Tran, alleging two counts: transportation of a controlled substance in violation of Health and Safety Code section 11379, subdivision (a), (count 1) and possession of a controlled substance for sale in violation of Health and Safety Code section 11378 (count 2). As to both counts, the district attorney alleged Tran's 1995 conviction was a prior conviction under Health and Safety Code section 11370.2, subdivision (a), which provides for a three-year enhancement. Tran faced a maximum prison term of seven years.

Donald Rance Welch, privately retained counsel, represented Tran.

In June 2007, Tran agreed to a negotiated disposition for a three-year prison sentence. He signed a standard "Felony Advisement of Rights, Waiver, and Plea Form" (plea form). Under the negotiated plea agreement, Tran would plead guilty to count 1, without admitting any enhancement allegations, in exchange for a three-year prison sentence. He initialed the form next to the advisement of the immigration consequences of his plea that if he was "not a citizen of the United States, [he] must

3

expect [his] plea of guilty or no contest will result in [his] deportation, exclusion from admission or reentry to the United States, and denial of naturalization and amnesty." Tran also initialed the form next to the acknowledgment that he "had a full opportunity to discuss with [his] attorney . . . the consequences of [his] plea." Above his signature on the form, Tran acknowledged he had "read and initialed each of the paragraphs above and discussed them with [his] attorney. [His] initials mean that [he has] read, understand[s] and agree[s] with what is stated in the paragraph." Welch also signed the form stating, "[Welch has] reviewed this form with [his] client. [Welch has] explained . . . the consequences of the plea."

On the same day, the trial court held a plea hearing. The court began by asking Tran if he read and understood the plea form, to which Tran responded, "Yes." The court asked Tran if after reading the form he had any questions about any of his rights or the consequences of his plea. Tran responded, "No." The court accepted Tran's form.

Regarding immigration consequences, the district attorney asked Tran, "I don't know if this applies to you or not, but if you're not a citizen of the United States, a conviction for this offense will have the consequences of denial of naturalization, denial of entry, denial of citizenship, and denial of amnesty. Do you understand that?" Tran responded, "Yes, ma'am."

The district attorney confirmed Tran was providing a *Cruz* waiver to remain out of custody before sentencing so he could be present for the birth of his child.[2]

---

[2]    See *People v. Cruz* (1988) 44 Cal.3d 1247.

4

Tran pleaded guilty to count 1. The court said it "again will accept the plea . . . ."

For his *Cruz* waiver, Tran agreed to plead guilty to count 2 and admit the prior conviction allegation, with the understanding that count and allegation would be dismissed when he returned for sentencing.

Regarding immigration consequences, the court said, "I am required to tell you if you're not a citizen of this country, you'll be denied rights to citizenship, naturalization, or the right of re-entry should you leave the country and then thereafter seek to return." The court asked if Tran understood his rights and the consequences of his plea, and Tran responded, "Yes, sir."

Tran pleaded guilty to count 2 and admitted the prior conviction allegation. In August 2007, Tran was sentenced to three years in state prison.

C.    *Tran's 2009 Notice To Appear and Final Removal Order*

In March 2009, DHS served Tran with a Notice to Appear for removal proceedings under section 240 of the Immigration and Nationality Act, charging him as removable based on his June 2007 conviction. In April 2009, an immigration judge ordered Tran's removal to Vietnam. Since July 2009, Tran has been permitted to continue residing in the United States under an Order of Supervision.[3]

---

[3]    The Order of Supervision states Tran was being placed under supervision because the agency "has not effected your deportation or removal during the period prescribed by law . . . ." Tran explains in his opening brief that Immigration and Customs Enforcement has been unable "to effectuate [his] removal order

D.	*Tran's 2020 Motion To Vacate His 2007 Conviction*

According to Tran, he first learned of "the actual immigration consequences of [his 2007] conviction" in February 2009 when he was placed in removal proceedings.  Tran sought legal counsel in February 2018, who informed him of the possibility of post-conviction relief under section 1473.7, subdivision (a)(1).

In March 2020, approximately 13 years after his conviction, Tran filed a motion to vacate his 2007 conviction under sections 1016.5 and 1473.7, subdivision (a)(1).  Tran argued the trial court failed to advise him on the record of the immigration consequences of his plea, which damaged his ability to meaningfully understand, defend against, or knowingly accept the adverse immigration consequences of his guilty plea.

In support of his motion, Tran submitted a declaration describing his understanding of the immigration consequences when he entered his guilty plea in 2007.  Tran explained he did not understand that by pleading guilty, he would be subjected to deportation and permanent separation from his family and that being "deported to Vietnam due to [his] guilty plea was not something [he] had considered."  Tran explained he was 30 years old when he entered his plea in 2007, at which time he had been living in the United States for 30 years, was a legal permanent resident (his original status had been asylee), had two children from a prior relationship, was expecting his first child with his

_____

due to the state of international relations between the United States and Vietnam . . . ."  Tran was released, pending deportation or removal, on certain conditions, including that he "appear in person at the time and place specified, upon each and every request of the Service, . . . for deportation or removal."

6

wife and had never been back to Vietnam. Had he known of the immigration consequences that would result from his conviction, "[i]t would have greatly impacted [his] decisionmaking process." Tran maintained he would not have pleaded guilty and instead would have made further inquiries with his attorney, sought an alternative plea, or if none were available, he "would have preferred to take [his] case to trial." Tran remembered his "attorney telling [him] that the plea offer was good because if [Tran] took [his] case to trial then [he] would likely lose and be facing a longer prison sentence." Tran did not remember discussing his "immigration status or the specific immigration consequences of the charges" with his attorney. Tran said, "[His] attorney never informed [him] that [Tran's] conviction in this case would make [him] inadmissible to the United States, would prevent [him] from being able to naturalize, and ultimately lead to [his] deportation" or that it would exclude him from applying for various forms of relief from removal. According to Tran, since his conviction in 2007, he had "completely turned [his] life around," had steady employment and provided for his family. Deportation would cause his family to "suffer an insurmountable amount of emotional and financial hardship."

Tran also supported his motion with naturalization certificates for his parents and birth certificates for his three younger siblings and two children born in the United States, all dated before his plea. In addition, he submitted his marriage certificate (his wife was born in the United States), a birth certificate for his third child born in the United States and letters from his wife, children, parents, siblings and employer all dated after his plea.

The trial court held a hearing in September 2020. The court explained its understanding that "as a baseline before [the court allows] a withdrawal of a plea," there has to be an "imminent" adverse immigration consequence. Given Tran's removal order had been in place for 11 years without being executed, the court inquired about the existence of an "imminent" harm. The court also asked about evidence "at the time of the plea that there would have been some other issue that would have changed" Tran's decision to plead guilty. The court observed that at the time of his arrest Tran "admitted to selling the dope [and] [s]aid he was doing it to pay for child support." The court noted the absence of a declaration from Welch, Tran's plea counsel.

Tran primarily argued that the trial court and the district attorney did not substantially comply with the immigration advisement requirement of section 1016.5 because they failed to include deportation as one of the consequences. Tran also argued that combined with the court's failure to comply with section 1016.5, the notice to appear and removal order were sufficient to establish adverse immigration consequences resulting from Tran's guilty plea. Further, given the removal order, Tran "can be picked up and taken back into ICE detention at any moment . . . ."

The People did not file an opposition, but at the hearing, pointed out that "there was a plea form in there and that [the prosecutor] did advise him of the consequences."

The trial court orally denied Tran's motion without explaining why.

## DISCUSSION

On appeal, Tran argues the trial court erred in denying his motion to vacate his conviction under sections 1016.5 and 1473.7, subdivision (a)(1).

But we conclude there was no error because Tran failed to establish the prejudice required under sections 1016.5 and 1473.7, subdivision (a)(1).

A.    *Governing Law and Standard of Review*

1.    *Section 1016.5*

Section 1016.5 requires that the trial court advise the defendant of possible adverse immigration consequences before accepting a guilty or no contest plea.  Specifically, "if the defendant is not a citizen of this country, conviction of the charged offense 'may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization . . . .'" (*People v. Arriaga* (2014) 58 Cal.4th 950, 957; see § 1016.5, subd. (a).)

Under section 1016.5, when a court does not advise a defendant, who is not a United States citizen, of possible adverse immigration consequences before accepting a plea, the defendant may have his conviction vacated and withdraw his plea:  "'If . . . the court fails to advise the defendant as required by this section and the defendant shows that conviction of the offense to which [the] defendant pleaded guilty or nolo contendere may have the consequences for the defendant of deportation, exclusion from admission to the United States, or denial of naturalization . . . the court, on [the] defendant's motion, shall vacate the judgment and permit the defendant to withdraw the plea of guilty or nolo

9

contendere, and enter a plea of not guilty.'" (*Arriaga, supra*, 58 Cal.4th at p. 957, quoting § 1016.5, subd. (b).)

A defendant seeking relief under section 1016.5 must establish three elements: "(1) that the advisements were not given; (2) that the conviction may result in adverse immigration consequences; and (3) that the defendant would not have pled guilty or no contest had proper advisements been given." (*People v. Arriaga, supra*, 58 Cal.4th at pp. 957-958.) "The defendant bears the burden of demonstrating prejudice." (*People v. Arendtsz* (2016) 247 Cal.App.4th 613, 617.) Specifically, he "must prove it was reasonably probable he or she would not have entered a guilty, no contest or nolo contendere plea if properly advised." (*Ibid.*)

We review an order denying a section 1016.5 motion for abuse of discretion. (*People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 192; *People v. Limon* (2009) 179 Cal.App.4th 1514, 1517-1518; accord, *People v. Arendtsz, supra,* 247 Cal.App.4th at p. 617.) "An exercise of a court's discretion in an arbitrary, capricious, or patently absurd manner that results in a manifest miscarriage of justice constitutes an abuse of discretion." (*Limon*, at p. 1518.)

2.    *Section 1473.7, subdivision (a)(1)*

Under section 1473.7, subdivision (a)(1), a defendant may vacate a conviction if the defendant establishes a prejudicial error that prevented the defendant from understanding, defending against, or knowingly accepting the immigration consequences of the defendant's plea:  "A person who is no longer in criminal custody may file a motion to vacate a conviction or sentence [because] [t]he conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to

10

meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere."

A defendant seeking relief under section 1473.7, subdivision (a)(1), must make two showings: (1) an error "damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences" of the plea, and (2) prejudice.[4] (*People v. Vivar* (2021) 11 Cal.5th 510, 528 (*Vivar*).) "[S]howing prejudicial error under section 1473.7, subdivision (a)(1) means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences." (*Id.* at p. 529.)

A defendant must establish a ground for relief by a preponderance of the evidence under section 1473.7. (§ 1473.7, subd. (e)(1).) "[W]hen a defendant seeks to withdraw a plea based on inadequate advisement of immigration consequences, we have long required the defendant corroborate such assertions with "'objective evidence.'"" (*Vivar, supra*, 11 Cal.5th at p. 530.)

"[T]he only finding that the court is required to make is whether the conviction is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere." (§ 1473.7, subd. (e)(4).)

---

[4] There are other requirements that must be met when moving to vacate a conviction under section 1473.7, subdivision (a)(1). (§ 1473.7, subds. (b)(2), (e)(1).) But we need not address them since they are not challenged.

We review the denial of a section 1473.7 motion independently. (*Vivar*, *supra*, 11 Cal.5th at pp. 524-525.) "'[U]nder independent review, an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law.' [Citation.] When courts engage in independent review, they should be mindful that "'[i]ndependent review is *not* the equivalent of de novo review . . . .'" (*Id.* at p. 527.) The motion is reviewed independently because of "the history of section 1473.7, the interests at stake in a section 1473.7 motion, the type of evidence on which a section 1473.7 ruling is likely to be based, and the relative competence of trial courts and appellate courts to assess that evidence." (*Ibid.*)

B.     *Tran Failed To Establish Prejudicial Error as Required by Sections 1016.5 and 1473.7, Subdivision (a)(1)*

The trial court did not err by denying Tran's motion to vacate his conviction under sections 1016.5 and 1473.7, subdivision (a)(1). We need not decide whether the proper advisements were given under section 1016.5 or whether there was an error damaging his ability to understand the immigration consequences of his plea under section 1473.7 because he did not establish by a preponderance of the evidence that any error was prejudicial.

Tran argues that evidence of his extensive ties to the United States at the time of his plea sufficiently corroborated his claim of prejudice. Tran also argues that, although the record contains no evidence of any discussion regarding an immigration-neutral plea, the absence of immigration-related concerns in the probation officer's report supported both his declaration that he did not remember any conversation with his attorney about immigration consequences and the inference that "immigration

12

was something that simply went overlooked" during the plea proceedings. Finally, Tran argues that his failure to fully comprehend the immigration consequences of his plea led to his failure to inquire further or try to negotiate an immigration-neutral plea.

The People contend Tran's extensive ties to the United States, standing alone, were insufficient under *Vivar* to show that immigration consequences were his "primary concern" during plea negotiations. The People argue that *Vivar* requires the court to consider the totality of the circumstances, and in the absence of any evidence, including from Tran's plea counsel, of the other *Vivar* factors, Tran failed to establish prejudice by a preponderance of the evidence. The People dispute Tran's characterization that immigration issues "simply went overlooked," pointing to sections of the probation officer's report that stated Tran was born in Vietnam and permanently registered in the United States. As to the possibility of an immigration-neutral plea, the People note that the evidence against Tran was "overwhelming" and that the negotiated plea agreement of three years was a "great deal."

In *Vivar*, *supra*, 11 Cal.5th at pages 529 to 530, the Supreme Court explained: "When courts assess whether a petitioner has shown that reasonable probability, they consider the totality of the circumstances. [Citation.] Factors particularly relevant to this inquiry include the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible." (*Id.* at pp. 529-530.)

13

Considering the totality of the circumstances, as *Vivar* requires, Tran's evidence of ties to the United States at the time of the plea, without more, is insufficient to corroborate his claim that immigration consequences were his primary concern at the time of his plea.[5] Tran offered little or no evidence that any of the other "[f]actors particularly relevant to this inquiry" supported a reasonable probability that he would have rejected the negotiated plea deal. (See *Vivar, supra,* 11 Cal.5th at pp. 529-530.) There was no evidence that Tran had reason to believe an immigration-neutral resolution was possible. There was no evidence that Tran tried to negotiate such a resolution, and he does not explain, given the charges against him, what an immigration-neutral resolution could have looked like. The record also suggests the case against Tran was strong, and Tran's trial counsel thought they would lose at trial. It does not appear Tran had reason to believe an immigration-neutral disposition was possible.

Tran's argument that he did not raise immigration issues during the plea negotiations because he failed to comprehend the full nature of the adverse immigration consequences of his plea is belied by the record. Tran knew he was not a citizen. The admonition in the plea form that Tran initialed and the prosecutor's and the court's oral admonitions, at a minimum, apprised him that there were some adverse immigration consequences. His 1995 conviction and the denial of his

---

[5] The question of what evidence is needed to adequately corroborate a defendant's claim that immigration consequences were a paramount concern for purposes of establishing prejudice under section 1473.7 is currently before the Supreme Court. (See *People v. Espinoza* review granted Sept. 15, 2021, S269647.)

14

application for naturalization in 1996 also alerted him, at least generally, to the possibility of immigration issues resulting from a conviction.

Tran's argument that section 1473.7 does not require a showing that immigration consequences were a defendant's "primary focus" during plea negotiations conflicts with *Vivar*'s instruction to consider the "importance the defendant placed on avoiding deportation, [and] the defendant's priorities in seeking a plea bargain." Tran urges that the absence of evidence showing he was focused on some other issue means he was focused on immigration consequences. But the record reflects that Tran's priority was to minimize his prison sentence. The only conversation about the plea deal Tran recalled having with his counsel involved his counsel telling him that the deal was good because Tran would likely lose at trial and face a longer prison sentence.

The cases cited by Tran where relief was granted—*Vivar*, *supra*, 11 Cal.5th 510, *People v. Mejia* (2019) 36 Cal.App.5th 859 (*Mejia*), *Lee v. United States* (2017) 582 U.S. __ [137 S.Ct. 1958, 198 L.Ed. 2d 476] (*Lee*), *People v. Camacho* (2019) 32 Cal.App.5th 998 (*Camacho*), and *People v. Ogunmowo* (2018) 23 Cal.App.5th 67 (*Ogunmowo*)—are distinguishable. In those cases, there was objective evidence beyond strong ties to the United States demonstrating that immigration consequences were the defendant's priority at the time of the plea and corroborating the defendant's later statements that he would not have pleaded had he known of the adverse immigration consequences. (See *Vivar, supra,* 11 Cal.5th at pp. 517, 530, 531 ["Time and again, the record readily conveys how Vivar would have considered his immigration status 'the most important part' of his decision to

15

plead"; the evidence included "[t]rial counsel's recollection and contemporaneous notes" that reflected Vivar's concerns about the immigration consequences of his plea; letters Vivar wrote to the trial court at or near the time of his plea in which he "objected to his immigration hold and emphasized" his deep family ties to the United States and said that his counsel failed to advise him that his plea would result in his deportation, and, had he been properly advised, he would not have pleaded guilty to the charge; the testimony of an immigration expert witness who established Vivar could have entered a plea agreement avoiding mandatory deportation]; *Camacho, supra,* 32 Cal.App.5th at pp. 1002-1003 [evidence included plea counsel's testimony that he discussed immigration consequences with all his clients and that he told Camacho "'because of his immigration problems, maybe the court would entertain a motion to terminate early after maybe a year and a half and expungement, so that might help'"]; *Lee, supra,* 137 S.Ct. 1958 at pp. 1963, 1960 [in the context of determining prejudice resulting from a Sixth Amendment violation based on ineffective assistance of counsel, the evidence included testimony from Lee and plea counsel that "'deportation was the determinative issue in Lee's decision whether to accept the plea'"; plea counsel further testified that although Lee's defenses were weak, "had he known Lee would be deported upon pleading guilty, he would have advised him to go to trial"]; *Ogunmowo, supra,* 23 Cal.App.5th at pp. 69, 73 [evidence included an affidavit from plea counsel that he was aware Ogunmowo was a Nigerian native who recently received his "'green card,'" and he "'recall[ed] Mr. Ogunmowo being concerned about what would happen to his immigration status if he was convicted in this case'"].)  In all these cases, except *Mejia,* the defendants provided

16

evidence from plea counsel and sometimes additional objective evidence that the defendants raised the issue of immigration consequences with their counsel or the trial court before their plea.[6]

In *Mejia, supra,* 36 Cal.App.5th at page 863, no declaration could be obtained because plea counsel was deceased. But in addition to the defendant's deep ties to the United States, there was other objective evidence to support a reasonable belief the defendant would not have pleaded guilty had he known of the adverse immigration consequences. First, the case against the defendant had evidentiary weaknesses. (*Id.* at p. 872.) Second, the defendant in *Mejia* pleaded "straight up" to the court rather than under a negotiated disposition, resulting in a probationary sentence. (*Ibid.*) Third, the court in *Mejia* concluded that, even if the defendant lost at trial, it was "simply not realistic to imagine that the court would have then imposed the maximum prison sentence," given that he had "no criminal record and this was an unsophisticated crime." (*Id.* at p. 873.)

This case differs from *Mejia* in at least two ways. First, Tran had the opportunity to negotiate his disposition, and the evidence against him was strong. Second, the record is devoid of the type of evidence in *Mejia* and the other cases Tran cites, such as evidence from plea counsel, the plea transcript or other contemporaneous documents that could corroborate Tran's claims that he prioritized immigration consequences and that he would

---

[6]     The record is silent as to Tran's attempt, if any, to contact his plea counsel. Although relief under section 1473.7, subdivision (a)(1), does not require a declaration from plea counsel, such a declaration may be a source of corroborating evidence about a defendant's priorities when he pleaded guilty.

17

not have accepted the plea deal had he understood the immigration consequences.

## DISPOSITION

The order denying Tran's motion to vacate his conviction is affirmed.

IBARRA, J.*

We concur:

SEGAL, Acting P. J.

FEUER, J.

---

* Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.